IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**PETER BOTTMAN, an individual**,

        Plaintiff,

    v.

**SPRINGFIELD PUBLIC SCHOOLS, a public school district, and DOES 1 THROUGH 50, Inclusive,**

        Defendant.

**Civ. No. 6:22-cv-01900-MC**

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

      In response to Oregon's COVID-19 vaccine mandate issued in October of 2021, Defendant Springfield Public Schools ("District") required all teachers to be vaccinated unless they qualified for an exemption. Plaintiff Peter Bottman requested a religious and a medical exemption. He was granted the medical exemption and was placed on unpaid leave with the right to return to work in the same position. When the State's vaccine mandate was lifted, Mr. Bottman returned to work but soon resigned, claiming he had been subjected to a hostile work environment. In this action, Plaintiff brings numerous claims under Title VII of the Civil Rights Act, religious discrimination claims under state law, constructive discharge claims, Americans with Disabilities Act claims, and First Amendment religion and speech claims. The District moves for summary judgment on all claims. The Motion is GRANTED in part and DENIED in part.

1 – OPINION AND ORDER

## BACKGROUND

Mr. Bottman began working as a teacher at Thurston High School in September of 2020, teaching child development, family relations, and standard culinary courses. Amended Compl. ("Compl."), ¶ 10. On October 18, 2021, the State of Oregon mandated that all public-school employees be vaccinated against COVID-19. *Id.* Approximately a month prior, the District entered into a Memorandum of Agreement ("MOA") with the Springfield Education Association (SEA), of which Mr. Bottman is a member. Under the MOA, the parties agreed that employees would be able to request a religious or medical exemption to the vaccine mandate and would receive an accommodation if granted. Compl., ¶ 10, 11. That MOA established that a reasonable accommodation for approved exemptions would be unpaid leave for the remainder of the school year, with right to return to the position in the following 2022-2023 school year. Reese Decl., ¶ 6. In a September meeting with Principal Chris Reiersgaard, Mr. Bottman expressed concern about the vaccine mandate, saying it would be a sad day when people lose their job over it. Compl., ¶ 23(a). Mr. Reiersgaard allegedly responded that it would "serve them right" to lose their job and that individuals who chose not to be vaccinated would be "Darwin Award winners." Compl., ¶ 23(a), (b).

Declining to receive the vaccine, Mr. Bottman subsequently submitted requests for religious and medical exemptions. Pl.'s Dep. 55:3-10. The District granted Mr. Bottman's medical exemption request and placed him on unpaid leave as an accommodation. Compl., ¶ 26, 29. The District did not make a determination for Mr. Bottman's religious exemption request. Jacobson Decl., ¶ 4.

In March of 2022, as COVID-19 conditions improved, the State lifted masking and other social distancing requirements in schools. Accordingly, the District offered the employees on

2 – OPINION AND ORDER

unpaid leave an opportunity to return. Employees returning to work who were not vaccinated would be required to wear a KN95 mask, take weekly COVID-19 tests, and maintain physical distances from others when they could not wear a mask, such as eating lunch. Compl., ¶ 36(b)-(d). Mr. Bottman alleges the following relevant facts, upon his return to school, as part of his discrimination and hostile work environment claims.

- Mr. Bottman and other unvaccinated employees were required to wear masks, while and students, vaccinated or not, were not required to do so. Bottman Decl., ¶ 18. Vaccinated employees were not required to wear masks. Mr. Bottman alleges that these conditions publicly "branded" him as unvaccinated, making him the target of hostility from those who supported compulsory vaccines. *Id.*

- Mr. Bottman was required to wear an a KN95 mask, which was "exceedingly uncomfortable." Opposition to Def.'s Mot. Summary Judgment at 13. Mr. Bottman alleges that this was unnecessary because, at that time, the Centers for Disease Control and Prevention ("CDC") had "all but abandoned its recommendation that masks be worn as a means of halting the spread of COVID-19, as the Pandemic had largely subsided." *Id.*

- Mr. Bottman had to eat lunch alone and maintain greater distance from students and colleagues as compared to vaccinated employees. *Id.* at 14.

- Only unvaccinated employees had to test weekly even though vaccinated employees were vulnerable to contracting and spreading COVID-19. *Id.*

- Mr. Bottman and other employees were returned to different campuses or classrooms than they had been in prior to their unpaid leave. *Id.*

3 – OPINION AND ORDER

- The District reduced the class size for unvaccinated teachers from 30 to 15, thereby disrupting the "social network" of classes that has previously been together. Mr. Bottman alleges that, in addition to disrupting cohesion, this created resentment and that made it difficult for Mr. Bottman and other unvaccinated teachers to perform their duties effectively. *Id.* at 15.

After the school year ended, Mr. Bottman asked the District to rescind the existing accommodation requirements. Bottman Decl., ¶ 25. The District declined and Plaintiff resigned on July 13, 2022.

## STANDARD OF REVIEW

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I.    Religious Discrimination**

Mr. Bottman alleges he was terminated because of his religious beliefs in violation of Title VII, 42 U.S.C. § 2000e and Or. Rev. Stat. § 659A.030(1)(a).[1] Title VII makes it unlawful for an employer to discharge an employee because of their religion. 42 U.S.C. § 2000e-2(a)(1); *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 (9th Cir. 1993). The term "religion" encompasses all aspects of religious practice and belief. 42 U.S.C. § 2000e(j); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 602 (9th Cir. 2004). Title VII failure-to-accommodate claims are analyzed under a two-part, burden-shifting framework. *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998). A plaintiff must first plead a prima facie case of religious discrimination. *Id*. If an employee articulates a prima facie case, the burden shifts to the employer to show that it made a good-faith effort to reasonably accommodate the religious practice or that it could not accommodate without undue hardship. *Id*. This standard is substantively similar to religious discrimination claims under ORS § 659A.030(1)(b), and "courts often analyze such claims together." *Tornabene v. Nw. Permanente, P.C.*, 156 F. Supp. 3d 1234, 1242 (D. Or. 2015)

To assert a prima facie failure-to-accommodate claim under Title VII, plaintiffs must allege that (1) they "had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [they] informed [their] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [them] to an adverse employment action because of

---

[1] Claims brought under Or. Rev. Stat. § 659A.030(1)(a) are analyzed under the same framework as claims brought under Title VII. *Detwiler v. Mid-Columbia Med. Ctr.*, No. 22-cv-01306-JR, 2022 WL 19977290 (D. Or. Dec. 20, 2022), *report and recommendation adopted,* 2023 WL 3687406 (D. Or. May 26, 2023).

5 – OPINION AND ORDER

[their] inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606. "According to the EEOC, 'a bona fide religious belief is one that is sincerely held.'" *Stephens v. Legacy-GoHealth Urgent Care*, 3:23-cv-00206-SB, 2023 WL 7612395, at * 3 (D. Or. Oct. 23, 2023) (quoting *U.S. Equal Emp. Opportunity Comm'n*, EEOC-CVG-2023-3, Section 12: Religious Discrimination, § 12-1(A)(2) (Jan. 15, 2021) (cleaned up)). Once a prima facie case for failure-to-accommodate is made, the burden shifts to the defendant to show that "it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Peterson*, 358 F.3d at 606.  An "undue hardship" arises when the "burden is substantial in the overall context of an employer's business*." Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023).

   A. Reasonable Accommodation

   The District here argues that no reasonable juror could find that the accommodation of unpaid leave was unreasonable. The Court disagrees. Defendant's Motion for Summary Judgment focuses on the second step of the burden-shifting framework: whether the District reasonably accommodated Mr. Bottman and could not have fashioned an alternative for Mr. Bottman without undue burden. Under Title VII, an employer must "demonstrate[] that it has offered a reasonable accommodation to the employee." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986). Title VII "directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (9th Cir. 1986).

   Mr. Bottman advances several overlapping arguments—some more relevant than others. Plaintiff initially alleges that the District exhibited discriminatory "pretext" in its decision to place the unvaccinated teachers on unpaid leave. Opposition to Def.'s Mot. Summary Judgment at 16.

Yet, for the purposes of religious discrimination claims, pretext is not part of the burden-shifting analysis of reasonable accommodation. Again, the central question is whether the accommodation to put the teachers on unpaid leave was unreasonable. Mr. Bottman also focuses on the first step of the burden-shifting framework—whether unpaid leave constituted an adverse employment action. Opposition to Def.'s Mot. Summary Judgment at 27. Mr. Bottman appears to argue, by implication, that a showing of an adverse employment action also satisfies the second step of the burden shifting framework, proving that the accommodation was unreasonable. *Id.* But the two steps are distinct: a showing of adverse employment is a requirement of the prima facie claim, but it is not determinative of whether the accommodation was reasonable.

Nonetheless, under the proper standard, the District here is not entitled to summary judgment because a reasonable factfinder could conclude that the accommodation for Mr. Bottman was unreasonable. As the District notes, courts have found that unpaid leave can be a reasonable accommodation. *See, e.g., Ansonia Bd. of Educ.,* 479 U.S. at 70; *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 455 (7th Cir. 2013). Those cases, however, do not involve the specific set of facts at issue here. In particular, *Ansonia* concerned an accommodation of three days of unpaid leave for the employees to observe a religious holy day. This accommodation, the Supreme Court reasoned, "eliminate[d] the conflict between employment requirements and religious practices" and "has no direct effect upon either employment opportunities or job status." *Ansonia*, 479 U.S. at 70–71. But here the accommodation is more burdensome: Plaintiff was placed not on leave for three days, but for the remainder of the school year. Far from resolving the conflict of employment and religious beliefs, this accommodation asks the teachers to make the significant sacrifice of going months without work or pay, not three days.

7 – OPINION AND ORDER

In its motion, the District relies heavily on the agreement made by Mr. Bottman's union, the SEA, to put unvaccinated teachers on unpaid leave. Def.'s Mot. Summary Judgment at 9. The District argues that they engaged in good-faith discussion with the SEA to determine what constituted the reasonable steps necessary to "ensure that unvaccinated teachers" were protected from contracting and spreading COVID-19. Reply to Mot. Summary Judgment at 14. The SEA agreed that the District could take "reasonable" steps to fulfill its obligation to protect the spread of CVOID-19 that was required under the vaccine mandate. However, as Defendant acknowledges, the fact that the union entered into an agreement with SEA does not nullify Plaintiff's individual claims under Title VII. While it certainly suggests that the district engaged in a good-faith effort to fashion a reasonable accommodation, it does not resolve the question as a matter of law.

The District further argues that Mr. Bottman's request to wear a mask and test each week—instead of facing unpaid leave without pay—would not have addressed the "threat of harm" that it considered in determining a reasonable accommodation. The District explained that Plaintiffs schedule, involving the supervision of 210 students, made masking and testing an unreasonable and unsafe accommodation. Whether this view is reasonable or not remains a question for a factfinder. The recent case of *Zimmerman v. PeaceHealth*, though not binding on the Court, is instructive. 2023 U.S. Dist. LEXIS 201874 at *24 (W.D. Wash. Nov. 9, 2023). There, the court addressed whether indefinite unpaid leave was a reasonable accommodation for health professionals who received a religious exemption from the COVID-19 vaccine. In declining to grant the defendant's motion to dismiss, the court recognized the severe nature of indefinite unpaid leave and questioned whether there would have been less burdensome alternatives that would have been reasonable. *Id.* As in *Zimmerman*, the employer here was operating under a state vaccine

order, but it was one that recognized the need for accommodation and did not specify that such an accommodation ought to be unpaid leave for an extended period of time.

B. Undue Burden

Even if a court finds that an accommodation was unreasonable, the employer is not required to fashion an alternative if it would impose "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). In *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), the Supreme Court recently examined what constitutes undue burden in the context of a Title VII claim. The Court explained that "a hardship is more severe than a mere burden" and must "rise to an excessive or unjustifiable level." *Id.* at 2294. The Court, in raising the standard for an undue burden analysis, explained that the burden of granting an accommodation would need to "result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 2295. Courts must "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.* at 470–71.

Here, a factfinder could reasonably conclude that the District could have implemented a less burdensome alternative accommodation without unduly burdening itself. As noted above, the District argues that an alternative accommodation, such as allowing teachers to stay at work but require masking and testing, would have placed the state in jeopardy of violating the vaccine mandate from the state. The order required the school to ensure that unvaccinated teachers and other staff be "protected from contracting and spreading COVID-19." Reese Decl. ¶ 4. Amended Reply ISO MSJ at 18. Further, Defendant argues that no reasonable factfinder could conclude that an alternative would result in substantial increased costs in relation to "the school's educational programs via additional administrative burden." Amended Reply at 18.

9 – OPINION AND ORDER

But the validity of these claims is not so clear. While the Court understands the difficult position of the District, particularly in light of what was unknown about the COVID-19 virus at the time, the order was to protect other teachers and other staff from contracting and spreading. The order was not to require that every teacher become vaccinated or face leave for remainder of the school year without pay. In fact, the order expressly provides for exemptions and notes the importance of the maintaining accommodations under Title VII of the Civil Rights Act. Accordingly, a reasonable factfinder could conclude that the District could have fashioned a less burdensome alternative. Because this remains a fact-specific question for a factfinder, Defendant is not entitled to summary judgment on the question reasonable accommodation.

## II.     Hostile Work Environment and Constructive Discharge

The District is entitled to summary judgment on Mr. Bottman's hostile work environment claim. Mr. Bottman claims for hostile work environment under Title VII, 42 U.S.C. § 1981 and ORS 659.030 have the same legal standard of review. *Piety v. City of Sweet Home*, No. 6:11-cv-6303-AA, 2013 WL 867376, at *4 (D. Or. Mar. 8, 2013). To prevail on his hostile work environment claim, a plaintiff "must show: (1) that she was subjected to verbal or physical conduct based on his religious beliefs; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017).

Even if Mr. Bottman were able to make a sufficient showing on the first and second prongs, his claim on the third prong fails as a matter of law. The third prong addresses whether the conduct was sufficiently severe or pervasive to amount to a hostile work environment. To make this determination, courts consider the totality of the circumstances, "including the

10 – OPINION AND ORDER

frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga.*, 847 F.3d 678, 687 (quoting *Faragher v. City of Boca* Raton, 524 U.S. 775, 788 (1998)). The "hostility need not be directly targeted at the plaintiff to be relevant to his or her hostile work environment claim." *Id.* (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004). "The working environment must both subjectively and objectively be perceived as abusive," and the objective analysis is done "from the perspective of a reasonable" person. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

     Mr. Bottman cites facts that do not rise to this standard. Mr. Bottman highlights numerous circumstances that that he believes created a hostile work environment. These include the requirement to wear a mask upon return, which, he argues, made him the target of harassment by students and teachers who disagreed with the decisions. He also claims that the District disrupted social networks in the final two and a half months of the school year, creating resentment from the students. Mr. Bottman also notes the alienation that he felt when returning and having to sit alone as a result of the social distancing required for unvaccinated staff. While the Court is sympathetic to the emotions that Mr. Bottman may have experienced upon returning to school, these alleged harms do not rise to the level of severe and pervasive abuse that an employee must experience in order to make out a hostile work environment claim. Accordingly, the Court finds that the Defendant is entitled to a judgment as a matter of law on this count.

11 – OPINION AND ORDER

The standard for a constructive discharge claim is more onerous than that of hostile work environment. Such a claim "contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016). A constructive discharge claim generally "can be regarded as an aggravated case of" a "hostile work environment." *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004). "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for [the plaintiff] to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). Because the Court finds that no reasonable juror could find for a hostile work environment claim, the Court similarly finds that no claim for constructive discharge could be successfully made. Defendant is entitled to summary judgment on this claim.

### III.    Freedom of Speech

Mr. Bottman argues that the requirement to wear a mask upon return from unpaid leave constitutes compelled speech and is therefore a violation of his First Amendment right to free speech. Certain conduct may be considered speech if it is "expressive" conduct. Just as the government cannot compel speech, it cannot compel expressive conduct. Conduct is expressive if it (1) intends to convey a message, and (2) is very likely to be understood by observers as conveying the message. *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (finding that the burning of the American flag was expressive conduct subject to First Amendment speech protections). Plaintiff contends that the intent of the mask requirement was to compel teachers to state, "I'm vaccinated." However, Plaintiff does not show facts demonstrating that the intent was anything

other than stated by school: to protect the spread of COVID-19. On the second prong—whether wearing a mask is likely to be understood by observers as conveying a message—Plaintiff also does not marshal sufficient facts or law. As Defendant notes, all conduct that may have "some kernel" of expressive conduct does not merit First Amendment protection; there must be a high likelihood that observers will perceive such conduct as expression. The Court here finds that no reasonable juror would find that Plaintiff's mask-wearing is compelled speech, consistent with other courts that have recently addressed this same question. *See, e.g., Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214 (D. Md. 2020); Parker v. Wolf, 506 F. Supp. 3d 271 (M.D. Pa. 2020); *Zinman v. Nova Se. Univ.*, No. 21-CV-60723 (S.D. Fla. Aug. 30, 2021).

## IV.  Free Exercise Claim

Plaintiff's free exercise claim also fails to survive summary judgment. Although not entirely clear, Mr. Bottman appears to raise a First Amendment retaliation claim, based on his reliance on *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). *Pinard* sets out the test for a First Amendment retaliation claim—not a First Amendment violation. Under *Pinard*, a plaintiff must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Id.*

On the first prong, Mr. Bottman has not alleged sufficient facts or legal precedent to make out a claim that declining to get vaccinated in protected First Amendment expression. But even if there were a plausible claim on the first prong, the claim would not survive the third prong, as Plaintiff does not sufficiently show that the protected activity—if in fact shown—was a substantial or motivating factor in the defendant's conduct. Under *Hartman v. Moore*, 547 U.S.

13 – OPINION AND ORDER

250, 260 (2006), a plaintiff must show that retaliatory motive was the but-for cause of the alleged retaliation. Mr. Bottman alleges that being placed on indefinite leave and being subject to adverse conditions at work is a result of religious discrimination. Yet Mr. Bottman was placed on leave because of his medical exemption, and there are no facts to suggest that his treatment when he returned from work was related to his religious beliefs. Furthermore, even if Mr. Bottman made prima facie showing of religious discrimination, the burden would shift to the government to show that it would have taken the same action in the absence of the protected conduct. *Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021). Here again the facts show that the District would have taken the same action, because the accommodation was based on unvaccinated status. Plaintiff's fee exercise claim is therefore dismissed.

V.      **American with Disabilities Act Claim**

Lastly, Mr. Bottman claims that he suffered employment discrimination under the Americans with Disabilities Act (ADA). To make out an employment discrimination claim under the ADA, the plaintiff must show that "(1) that [he is] disabled within the meaning of the ADA; (2) that [he is] a qualified individual with a disability; and (3) that [he was] discriminated against because of [his] disability." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). In *Murray v. Mayo Clinic*, the Ninth Circuit recently clarified that a successful claim must demonstrate that the adverse employment action in question would not have occurred "but for" the disability. *Id.* In this case, the disability is not the but-for cause of the alleged adverse employment action—being unvaccinated is. Plaintiff here argues that his vaccination status and "the reasons for it–both medical and religious–are too intertwined for the Court to treat the District's decision to place him on unpaid leave as anything but a response to his need for accommodations." Plaintiffs' Opposition to Def.'s Mot. at 34. Yet this reasoning ignores the

required "but-for" analysis and would appear to place any differential treatment of unvaccinated teachers in jeopardy of disability discrimination.

The Court finds that no reasonable factfinder could conclude the District discriminated against Mr. Bottman based on disability.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 15, is GRANTED in part and DENIED in part. The Court DENIES summary judgment on Plaintiff's religious discrimination claim under Title VII and Oregon state law. Summary Judgment is GRANTED as to all other claims.

DATED this 12th day of July, 2024.

                                                                               _____/s/ Michael J. McShane_____
                                                                                    Michael McShane